**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHRIS McLAUGHLIN and<br>SANDRA McGRATH,<br>Individually and on Behalf of All Other<br>Persons Similarly Situated,<br><br>                                        Plaintiffs,<br><br>             v.<br><br>HARBOR CRUISES LLC and<br>NOLAN ASSOCIATES LLC<br>(both d/b/a "Boston Harbor Cruises")<br>and FREDERICK L. NOLAN III,<br><br>                                        Defendants. | C.A. No.  06-CA-11299-GAO |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION OF CLAIMS ALLEGED**
**IN COUNTS II AND III OF THE SECOND AMENDED COMPLAINT**

**Introduction**

In this action, Plaintiffs Chris McLaughlin ("McLaughlin") and Sandra McGrath ("McGrath") seek to recover unpaid overtime compensation owed by Defendants to themselves and other persons who were employed by Defendants Harbor Cruises LLC, Nolan Associates LLC, and Frederick L. Nolan III as "Deckhands" and "Galley Staff." Count I of the Second Amended Complaint (the "Complaint") is brought by both Plaintiffs pursuant to the Fair Labor Standards Act, 29 U.S.C. §§207, *et seq.* (the "FLSA"), on behalf of themselves and 51 other persons employed by Defendants as Deckhands and Galley Staff who have affirmatively opted into the case. By contrast, Counts II and III of the Complaint set forth Fed. R. Civ. P. 23 class claims under Massachusetts law on behalf of *all* persons employed by Defendants in Massachusetts as Deckhands and Galley Staff during the period between July 27, 2004 and the date of final resolution of this action (the "Class Period").

In Count II, Plaintiff McLaughlin alleges that Defendants' failure to pay overtime compensation to all persons who worked for Defendants in Massachusetts as Deckhands during the Class Period (the "Deckhand Class") constituted a violation of M.G.L. c. 151, §§1A and 1B. In Count III, Plaintiff McGrath alleges that Defendants' failure to pay overtime compensation to all persons they employed as Galley Staff during the Class Period (the "Galley Staff Class") violated the same statute. Plaintiffs allege that Defendants' decision not to pay overtime to the members of the Deckhand Class and the Galley Staff Class was made in bad faith, by reason of which the Defendants should be required to pay treble damages to the members of both Classes under M.G.L. c. 151, §1B. A recent amendment to that statute provides that treble damages are automatic with no need to prove bad faith. *See* Chapter 80 of the Massachusetts Acts of 2008, Section 6, April 14, 2008, a copy of which is annexed to the May 1, 2008 Declaration of Thomas V. Urmy, Jr. submitted herewith ("Urmy Decl.") as Exhibit 9.

The present motion seeks certification of the state law claims set forth in Count II on behalf of the Deckhand Class and in Count III on behalf of the Galley Staff Class. Plaintiffs request that the Court exercise supplemental jurisdiction over their state law claims, an issue that in this Circuit is left to the discretion of the trial court. *See Grispino v. New England Mutual Life Ins. Co.*, 358 F.3d 16, 18 (1st Cir. 2004); *McLaughlin v. Liberty Mutual Ins. Co.*, 224 F.R.D. 304, 308, 313 (D.Mass. 2004) (Keeton, J.); and *Wise v. Patriots Resorts Corp.* (D.Mass. 2006) (Ponsor, J.) (slip op. attached as Exhibit A). Unlike the FLSA, which requires individual employees to opt into the case (*see* 29 U.S.C. §216), under Massachusetts law, persons wishing to pool resources in a representative action seeking overtime pay must file a Rule 23 class action, in which the plaintiff may advance claims on behalf of all employees similarly situated, regardless of whether they affirmatively decide to opt into the case. However, employees can opt out of the case pursuant to Rule 23(c)(2)(B) should they

decide they do not wish to be members of the certified class. Thus, no employee will be required to advance a claim against his or her will.

This distinction between the state and federal representative actions described above is significant, because the Rule 23 approach is more accommodating to an employee who fears reprisal from the employer if he or she were to affirmatively opt into the case under the FLSA. *See e.g., Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091 at *4 (N.D.Ill. Dec. 1, 2000) (certifying companion state law claim to FLSA proceedings and noting that "availability of the FLSA action" did not cure the problem of an employee's potential inhibition to join a FLSA action because of the "possibility of retaliation" because "the nature of the economic dependency involved in the employment relationship is inherently inhibiting"). Such seems to be the case here, since approximately 95% of the persons who filed opt-in Notices under Count I of the Complaint are former employees of the Defendants, while only 3 are currently employed.[1] This fact, together with the facts set forth in the declarations of Shaun M. Nye and Vincent P. Dunn, Esq., both dated April 28, 2008, and filed herewith, constitute substantial evidence of employee fears of potential retaliation as the reason for not joining the FLSA proceedings. *See, infra,* at Section II(A), pp. 9-12.

Thus, although the federal and state statutory schemes are quite similar, employees often invoke the class action mechanism of Rule 23 in addition to the collective action provisions of the FLSA to obtain similar relief for employees who are reluctant to affirmatively join in the FLSA claim. Recognizing the judicial economies in litigating the federal and state statutory overtime claims in a single proceeding (which require essentially the same offers of proof to be applied to

---

[1] A total of 59 persons filed opt-in Notices. Only 3 of those persons are current employees of the Defendants. *See* Urmy Decl., ¶8 and Exhibit 8.

similar if not identical legal standards), courts routinely certify such state law overtime claims under

Rule 23 as companion claims to FLSA proceedings:

> Both claims raise the same basic grievance:  that plaintiffs were not
> paid the amount required under FLSA or under [state law].  Resolving
> the [state law] claims along with the FLSA claims will not be unduly
> burdensome, and is encouraged by the Supreme Court precedent. . . .
> In this case, the essential facts and issues are likely to be the same and
> pre-trial proceedings are not likely to be materially more burdensome,
> nor is it likely that a trial will be materially prolonged. . . .

*Beltran-Benitez v. Sea Safari, Ltd.*, 180 F.Supp.2d 772, 774 (E.D.N.C. 2001) (certifying companion

state law claim to FLSA collective action proceedings) (citations and internal quotation marks

omitted).  *See also McLaughlin v. Liberty Mutual Ins. Co., supra,* 312 ("Resolution of common

[FLSA and Massachusetts state law] issues in a single forum will promote judicial economy and

uniformity of outcome."); *Wise v. Patriot Resorts Corp., supra* ("it would be a waste of judicial

resources and would increase litigation costs to require employees to file two actions to obtain

remedies on the same basic fact situation under federal and state theories") (internal quotation marks

omitted); *Lindsay v. Government Employees Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006) (federal courts

have jurisdiction to handle state law Rule 23 opt-out class in conjunction with FLSA collective

actions despite procedural differences between Rule 23 and FLSA's representative action

provisions).  In some jurisdictions, such as New York, they have become the norm.[2]

---

[2] *Lynch v. USAA*, No. 07-562, 2007 WL 3355506, at *4 (S.D.N.Y. Nov. 8, 2007) ("[T]he courts in this Circuit do not consider FLSA opt-in and state-law opt-out class certification requirements conflicting. . . .");*Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176 (W.D.N.Y. 2007) ("Rule 23 and FLSA actions are routinely prosecuted together, and the complexities of Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet.") (citing *Lindsay*, 448 F.3d 416); *Westerfield v. Washington Mut. Bank*, No. 06-2817, 2007 WL 2162989 at *2-3 (E.D.N.Y. July 26, 2007) (citing *Lindsay*, 448 F.3d 416); *Yeboah v. Cent. Parking Sys.*, 2007 WL 3232509, at *4, 9 (S.D.N.Y. Sept. 28, 2007); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178 (S.D.N.Y. 2007); *Ebbert v. Nassau County*, No. 05-5445, 2007 WL 2295581 (E.D.N.Y. Aug. 9, 2007) (authorizing federal Equal Pay Act collective action, which uses the same opt-in mechanism as FLSA, and certifying New York Equal Pay Act Rule 23 opt-out class action); *Klein v. Ryan Beck Holdings, Inc.* No. 06-3460, 2007 WL 2059828 (S.D.N.Y. July 13, 2007); *Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202, 204 (S.D.N.Y. 2007) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and

For the reasons stated in this memorandum, Plaintiffs each respectfully request that this Court issue an order granting class certification of their Massachusetts law claims so that those claims and their FLSA claims can be prosecuted in the most efficient manner possible.

### The Massachusetts Statute

Mass. Gen. L. c. 151 §1A provides, in relevant part, that:

> Except as provided in this section, no employer in the commonwealth shall employ any of his employees . . . for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which he is employed.

> ***

> This section shall not be applicable to any employee who is employed

> (10) as a seaman.

Chapter 151 §1B provides that any person who has not been paid the overtime compensation to which he or she is entitled under c. 151 §1A:

> may recover in a civil action three times the full amount of such overtime rate of compensation less any amount actually paid to him or her by the employer, together with costs and such reasonable attorneys' fees as may be allowed by the court. . . .

Mass. Gen. L. c. 151 §20A provides a two-year statute of limitations for such claims.

### The Instant Motion

By this motion, Plaintiff McLaughlin seeks an order certifying a Deckhand Class consisting of:

---

hour claims are considered together.); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 374 (S.D.N.Y. 2007); *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05-4116, WL 103073, at *9 (S.D.N.Y. Jan. 12, 2007) ("Courts in this Circuit, however, have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method."); *Torres v. Gristede's Operating Corp.*, No. 04-3316, 2006 WL 2819730, at *11 (S.D.N.Y. Sept. 29, 2006) (certifying New York class action alongside FLSA collective action noting that "[d]istrict courts in this Circuit have previously exercised jurisdiction over cases involving both FLSA and NYLL claims").

> all persons who were employed by Defendants as Deckhands in the
> Commonwealth of Massachusetts between July 27, 2004 and the date
> of entry of final judgment in this action.

Plaintiff McGrath likewise seeks an order certifying a Galley Staff Class consisting of:

> all persons who were employed by Defendants as Galley Staff in the
> Commonwealth of Massachusetts between July 27, 2004 and the date
> of entry of final judgment in this action.

Plaintiffs seek to be certified as the representatives of their respective Classes and request that the law firm Shapiro Haber & Urmy LLP be appointed class counsel.

It is not disputed that Defendants have not paid any overtime compensation to any Deckhands or Galley Staff for any hours worked in excess of 40 in any week during the Class Periods. Instead, by way of affirmative defense, Defendants assert that Deckhands and Galley Staff were not entitled to overtime compensation under Massachusetts law because they were employed as "seamen" and therefore are exempt under M.G.L. 151 §1A(10). Thus, the threshold issue presented by Counts II and III will be whether the job duties of the Plaintiffs and the putative Class Members are consistent with the seaman exemption contained in that statute.

### Factual Background:  The Job Duties of the Massachusetts Deckhands and Galley Staff

The Court has already found that the job duties of Deckhands and Galley Staff employed by the Defendants are sufficiently similar to authorize notification of all such persons, throughout the entire United States (let alone Massachusetts), of their right to join in this action and pursue claims as "similarly situated" employees under the FLSA. *See* Electronic Order dated October 30, 2007. There is ample evidence in the record to support a finding that the Deckhands  and Galley Staff members' job duties are sufficiently similar to others employed in those capacities by the Defendants to warrant class certification under Rule 23.

The declarations of the Plaintiffs and opt-in Plaintiffs submitted in support of Plaintiffs' FLSA Notice motion describe the duties of the members of each of the two classes sought to be

certified.  As explained therein, based on their experiences, observations, and conversations with other Deckhands and Galley Staff, the job duties and compensation arrangements did not vary from person to person within each group of putative Deckhand or Galley Staff Class Members, irrespective of the vessel or the type of trip (e.g. commuter, whale watch, etc.) on which the work was performed.  *See* Declarations of Plaintiffs Chris McLaughlin (Docket No. 19), ¶¶4-7; Sandra McGrath (Docket No. 20), ¶¶4-8; Mark Pohlman (Docket No. 21), ¶¶2-6; Mike Pohlman (Docket No. 22), ¶¶2-6; Michael C. Fitzgerald (Docket No. 23), ¶¶2-6; Edward F. McGrail (Docket No. 24), ¶¶2-6; and John J. Hamm III (Docket No. 25), ¶¶2-6.  This testimony is corroborated by the Defendants' Wage and Benefit Guidelines (Exhibit 3 to Docket No. 18, at 000043) and Defendants' Crew Member and Orientation Manual (Urmy Decl. Exhibits 1 and 4).

The primary duties of Plaintiff McLaughlin and other members of the putative Deckhand Class consisted of collecting tickets from passengers; counting passengers; assisting passengers who were boarding and disembarking boats to ensure their safety; cleaning decks, exteriors and windows of boats; cleaning toilets on boats; removing trash from the boats; stocking boat supplies; and removing snow and ice from boat decks, docks and surrounding areas.  *See* McLaughlin Decl., ¶4; Mark Pohlman Decl. ¶2; Hamm Decl. ¶2; Mike Pohlman Decl. ¶2; McGrail Decl. ¶2; Fitzgerald Decl. ¶2. *See also* Defendants' Crew Member and Orientation Manuals, Urmy Decl. ¶¶1, 4, Exhibits 1, 4, and the deposition testimony of Defendant Nolan referred to in those paragraphs.  These duties were essentially the same whether an employee had the title of "Deckhand" or the title of "Senior Deckhand." *See* McLaughlin Decl., ¶1; Hamm Decl., ¶1-2.  Substantially more than 20% of the time spent working by Plaintiff McLaughlin and members of the putative Deckhand Class was spent in activities such as these that were not rendered primarily as an aid in the operation of the vessels on which they worked.  *See* McLaughlin Decl., ¶5; Mark Pohlman Decl. ¶3; Hamm Decl. ¶3; Mike Pohlman Decl. ¶3; McGrail Decl. ¶3; Fitzgerald Decl. ¶3.

The primary duties of Plaintiff McGrath and other members of the putative Galley Staff Class consisted of working as a bartender on vessels owned by the Defendants; selling food and beverage items to passengers; operating the galley's cash register; stocking and cleaning the galley area of the vessels; removing trash from the vessels; and occasionally taking tickets, cleaning boats and giving minor first aid, seasickness, and other assistance to passengers. *See* McGrath Decl. ¶4. *See also* Urmy Decl. ¶¶4-6 and Exhibits 4-6. Substantially more than 20% of the time spent working by Plaintiff McGrath and members of the putative Galley Staff Class was spent in activities such as these that were not rendered primarily as an aid in the operation of the vessels on which they worked. *See* McGrath Decl. at ¶5.

At his Fed. R. Civ. P. 30(b)(6) deposition, Defendant Frederick L. Nolan III, testifying as the Managing Member of both corporate Defendants, stated:

> . . . generally, I think all deckhands, whether they're acting as a senior deckhand or not, have very similar responsibilities and duties during the course of a typical trip.

Urmy Decl. ¶3 and Exhibit 3. Mr. Nolan also stated that the duties of Galley Staff employed on Defendants' vessels were "pretty similar," no matter what kind of vessel they are on. *See* Urmy Decl. ¶6 and Exhibit 6. This testimony corroborates the statements in the Declarations of the Plaintiffs and opt-in Plaintiffs described above.

## ARGUMENT

### I.   STANDARDS FOR CLASS CERTIFICATION.

The importance of class action procedures is well established: "Class actions serve an important function in our system of civil justice" because they permit a plaintiff to "vindicate the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." *Depositors Guaranty National Bank v. Roper*, 445 U.S. 326, 338, 100 S.Ct. 1166 (1980). Class actions conserve the

resources of both courts and parties by permitting issues potentially affecting all Class members "to

be litigated in an economical fashion under Rule 23." *General Telephone Co. of Southwest v.*

*Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 2369 (1982).

Rule 23 of the Federal Rules of Civil Procedure determines whether an action may be

maintained as a class action:

> ### RULE 23.  CLASS ACTIONS
>
> (a)  **Prerequisites to Class Action.**  One or more members
> of a class may sue or be sued as representative parties on behalf of all
> only if (1)  the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the represen-
> tative parties will fairly and adequately protect the interests of the
> class.
>
> (b)  **Class Actions Maintainable.**  An action may be main-
> tained as a class action if the prerequisites of subdivision (a) are
> satisfied, and in addition:
>
> &#42;&#42;&#42;
>
> (3)  the court finds that the questions of law or fact common
> to the members of the class predominate over any questions affecting
> only individual members, and that a class action is superior to other
> available methods for the fair and efficient adjudication of the
> controversy.

As explained below, Plaintiffs each of the above requirements are met here.

II.   **THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED.**

When considering whether a Plaintiff has satisfied the requirements for a class action,

"[d]oubts should be resolved in favor of certification. . . ." *Payne v. Goodyear Tire & Rubber Co.*,

216 F.R.D. 21, 25 (D.Mass. 2003) (Gertner, J.) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.

1968) ("if there is to be an error made, let it be in favor and not against maintenance of the class

action, for it is always subject to modification should later developments during the course of the trial so require").

### A.   The Class Is So Numerous That Joinder Is Impracticable.

Fed. R. Civ. P. 23(a)(1) requires that a class be so numerous that joinder of all class members be impracticable.  This does not require that joinder of the class members be impossible, but only that it be difficult or inconvenient to do so.  *See Advertising Specialty Nation Ass'n v. F.T.C.*, 238 F.2d 108, 119 (1st Cir. 1956).  Generally a class of 40 or more persons is "found to establish numerosity." *In re Relafen Antitrust Litigation*, 218 F.R.D. 337, 342 (D.Mass. 2003) (Young,J) (citations omitted) (certifying class of approximately 60 class members).[3]  In *McLaughlin v. Liberty Mutual Ins. Co., supra*, the Court found a class of 51 members to be sufficiently numerous under Fed. R. Civ. P. 23(a)(1).  *See* 224 F.R.D. 307-09.

Here, FLSA notice was sent to some 328 employees of the Defendants, including both Deckhands and Galley Staff who worked on the company's fleet of 23 vessels. *See* Urmy Decl., ¶7 and list of employees attached thereto as Exhibit 7.  While the list of employees provided by Defendants to the Plaintiffs did not differentiate as to which were Deckhands versus Galley Staff, Plaintiffs estimate that there are at least 100 members (and probably more) of the putative Deckhand Class and at least 50 members (and possibly more) of the putative Galley Staff Class.  *See* McLaughlin Decl., ¶3; McGrath Decl., ¶3.

In determining whether the numerosity requirement is satisfied, even if the proposed class is smaller than 40, other factors also here weigh in favor of certification. *Laadegard*, 2000 WL 1774091 at *4.  Those factors include "the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining

---

[3] *See also Holton v. L. F. Rothschild, Unterberg, Towbin*, 118 F.R.D. 280, 281-82 (D.Mass. 1987) (McNaught,J.) (class with 50 or 60 members was "sufficiently large" to warrant class action treatment).

all the putative class members." *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 613 (D. Minn. 2000) (certifying class of 71 class members).

The nature of this action, a claim for overtime compensation on behalf of a large number of current employees of the Defendants, strongly militates in favor of certification. As other federal courts have noted in permitting state law Rule 23 classes to accompany FLSA proceedings, many employees feel inhibited for fear of reprisal when considering whether to join a FLSA collective action. *See O'Brien v. Encotech Construction Services, Inc.*, 203 F.R.D. 346, 351 (N.D.Ill. 2001) (when determining whether numerosity has been met, "a very important concern is the fear of retaliation for individual employees required to file individual claims, either on their own or as part of the FLSA collective action. . . ."); *Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 267 (D.Conn. 2002) (rejecting defendant's argument that those employees who wished to participate in the litigation would have opted in to the FLSA action "especially in light of the evidence that potential class members failed to join the FLSA class action because they feared reprisal"); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (finding numerosity was met and noting that employees' "fear of reprisals" rendered "individual suits" an impractical "alterative to a class action"); *Ladegaard*, 2000 WL 1774091 at *4 ("[t]he possibility of retaliation is also a factor when considering whether joinder is impracticable"). *See also McLaughlin v. Liberty Mutual Ins. Co., supra*, 224 F.R.D. 309.

Moreover, federal courts have taken the fear of reprisal into account even when there is no evidence in the record of employee concern over the issue <u>and</u> where employees were also presented with an option to join the action pursuant to the FLSA claim:

> Although there is only plaintiff's suggestion of intimidation in this instance, the nature of the economic dependency involved in the employment relationship is inherently inhibiting. Further, the court does not agree with defendants' assertion that the availability of the FLSA action cures these problems.

*Ladegaard*, 2000WL 1774091 at *4.

Here, there is ample evidence of employee concern over retaliation for joining the lawsuit. One of the opt-in Plaintiffs, a current employee, was subjected to drug testing shortly after his consent was filed, even though he had never before been drug tested in the nearly 4 ½ years he worked for Defendants. *See* Declaration of Shaun M. Nye ("Nye Decl."), ¶5. At least 17 current employees have told either an opt-in Plaintiff or Plaintiff's counsel that they feared retaliation in the form of a reduction in hours or a termination of employment were they to file a consent. *See* Nye Decl., ¶¶6-7; Declaration of Vincent P. Dunn ("Dunn Decl."), ¶¶2-4. Furthermore, of the 59 persons who sought to file consents in this case, whether as a named Plaintiff or an opt-in Plaintiff, only three of them (or 5%) were current employees of the Defendants (Urmy Decl. ¶8 and Exhibit 8). This extreme disparity in participation rates between current and former employees strongly supports the picture that current employees did not affirmatively opt in because they feared retaliation.

Finally, it would be impractical and wasteful of the courts' and the parties' resources to have roughly 300 separate lawsuits across the Commonwealth all addressing the identical question of the Defendants' liability on the same facts, under the same Massachusetts statute. *McLaughlin v. Liberty Mutual Ins. Co., supra*, 224 F.R.D. 308; *Wise v. Patriot Resorts Corp.* (Exhibit A hereto), at 6. This action and its earlier companion action (*McLaughlin v. Boston Harbor Cruises, Inc., et al.*, No. 1:03-cv-10905) have been litigated for almost 5 years, with significant motion practice on a variety of issues, and the case must still go to trial. The amount at stake for any one Class member would not warrant the expense and fees involved in litigating these claims individually.

Accordingly, there can be no question that Plaintiffs have satisfied the numerosity requirement pursuant to Fed. R. Civ. P. 23(a)(1).

B.   **There Are Questions Of Law And Fact Common To The Class Members.**

"The commonality element requires that resolution of the common questions affect all or a substantial number of the class members." *Relafen*, 218 F.R.D. at 342 (citations and internal quotations omitted). Here, there are numerous common factual and legal questions. Common factual questions include, merely by way of example, whether the Defendants refused to pay overtime compensation to Deckhands and Galley Staff when they worked more than forty hours in a workweek and what actions Defendants took or failed to take in determining whether or not such persons were entitled to receive such compensation based on their common job duties. Common legal questions include whether the Deckhands and Galley Staff were properly classified as exempt from the Massachusetts overtime laws, how the overtime rate of pay should be calculated, and, with respect to the period prior to July 13, 2008, whether the Defendants acted in bad faith when classifying such persons exempt.

As other courts have found in considering similar state law overtime claims, these common questions are more than sufficient to satisfy the commonality requirement of Rule 23(a)(2). *McLaughlin v. Liberty Mutual Ins. Co.*, 224 F.R.D. at 309 (common employment practices of defendant, and common issues regarding exempt classification and employer's good or bad faith, establish commonality); *Beckmann*, 192 F.R.D. at 613 ("The rule does not require that every question of law or fact be common to every member of the class, and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."); *Scott*, 210 F.R.D. 261, 267 (commonality found where each employee performed the same job duties and "each was allegedly underpaid the overtime compensation they were entitled to receive for their services"); *Wise*, Exhibit A hereto, slip. op. p. 7 ("To the extent that minor areas of difference arise, the court [can] assure

fairness to defendants through management of the trial"). *See also Natchitoches Parish Hospital Service District v. Tyco International, Ltd.*, 247 F.R.D. 253, 263-64 (D.Mass. 2008).

C.   **Plaintiffs' Claims Are Typical Of The Claims Of The Class.**

Rule 23(a)(3) requires that the claims or defenses of a class representative be typical of the claims or defenses of members of the class:

> [A] representative plaintiff's claims are typical of those of the class as a whole if defendants engaged in the same course of allegedly wrongful conduct with respect to the representative class members as to other class members. . . . Seen in this light the burden on plaintiff in proving typicality is not "very substantial."

*Abelson v. Strong*, Civ. A. No. 85-0592, 1987 WL 15872 at *2 (D.Mass. July 30, 1987) (Skinner, J.); *Relafen*, 218 F.R.D. at 342-343 (typicality established "by demonstrating that the named plaintiffs' claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations and internal quotations omitted).

In the present case, the claims of the Plaintiffs and the two putative Classes arise out of the same policies and wrongful conduct of the Defendants, and are based on the same legal theories. Plaintiffs' claims are not simply "typical" of those of the Class they seek to represent; they are identical. In essence, Plaintiffs claim that pursuant to M. G. L. c. 151 §1A, they and all other Deckhands and Galley Staff employed by Defendants in Massachusetts have been entitled to overtime compensation throughout the Class Period for each hour they have worked in excess of forty in a workweek. Each Deckhand has suffered damages as a result of a similar course of conduct that Defendants attempt to justify on the same basis as to all of the Deckhands. Each has an identical interest in obtaining redress. The same is true with respect to Plaintiff McGrath and the members of the putative Galley Staff Class. The fact that Plaintiffs may have "worked different hours at different locations for different [supervisors], during different periods of time and for different levels of compensation . . . cannot undermine the conclusion that each putative class member's claims arise

14

from the same course of events and each class member will make a similar legal argument to

demonstrate liability." *Ansoumana*, 201 F.R.D. at 87; *Scott*, 210 F.R.D. at 267 (finding typicality on

similar state law overtime claim where all employees performed same job).  Therefore, the claims of

each and Defendants' defenses are typical of the claims and defenses pertaining to the Class which

each Plaintiff seeks to represent, *Natchitoches*, 247 F.R.D. at 264.

D.    **The Plaintiffs Will Fairly And Adequately Protect The Interests Of The Proposed Class.**

Finally, Rule 23(a)(4) requires that Plaintiffs "demonstrate that [their] interests will not

conflict with those of the class members and that [their] counsel is qualified, experienced and able

to vigorously conduct the proposed litigation."  *Payne*, 216 F.R.D. at 26 (Gertner, J.).  A lack of

conflict between the class members "follows from . . . findings on commonality and typicality." *Id.*

All members of each Class have the same interest as other members of that Class in being properly

compensated for any overtime hours worked during the class period.   The interests of the Plaintiffs

are thus identical to those of the members of the Class each seeks to represent.  Plaintiffs accordingly

qualify as adequate class representatives under Rule 23(a)(4).

In addition, Plaintiffs do not understand Defendants to contest the adequacy of Plaintiffs'

counsel in this action.  As described in the Urmy declaration at ¶9 and Exhibit 9 thereto, and as the

Court found in *McLaughlin v. Liberty Mutual Ins. Co., supra*, 224 F.R.D. 310, Plaintiffs' counsel

has significant experience in prosecuting these types of complex actions.  Plaintiffs and their counsel

are committed to the vigorous prosecution of this action.  Plaintiffs' counsel has diligently pursued

discovery, and conducted considerable independent investigation of the facts surrounding the claims

of Plaintiffs and the two putative Classes.  *Id.*  Plaintiffs' interest in the outcome of the action, and

their representation by a law firm which is thoroughly experienced in wage and hour class action

litigation, assure that Plaintiffs will continue to press the Classes' claims and adequately represent the interests of the absent Classes.

III.   **THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED.**

To determine whether the questions presented in the case satisfy the predominance requirements of Rule 23(b), the Court must find:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

### A.   Common Issues of Liability, Bad Faith, and the Proper Overtime Rate of Compensation Predominate Over Any Individual Damage Issues.

The two major issues in this litigation common to each putative Class predominate:  whether Defendants properly classified Massachusetts Deckhands and Galley Staff as exempt, and, if not, whether Defendants acted in bad faith in doing so.[4]  Neither such issue requires an examination of individual issues.  Unless Defendants can meet their burden of showing that the members of the Class were exempt seamen, the members of each Class will be entitled to recover under claims that are identical to the claims of the other members of that Class.  The appropriateness of class certification under such circumstances is clear.[5]

---

[4] The recent amendment to the Massachusetts overtime statute makes treble damages mandatory for the claims asserted in Counts II and III.  *See* Urmy Decl. ¶10 and Exhibit 10.  If that amendment is deemed retroactive, it will be irrelevant whether Defendants acted in good faith or bad faith.  But if the issue remains with respect to Defendants' past conduct, it will be the same issue for all members of both proposed classes.

[5] Unlike some cases, if liability is established here, there will be no difficulty in establishing the damages of each Class Member, since Defendants have records of the number of hours worked each week by each employee.  Even were that not the case, however, it is well established that individual questions of damages do not bar class treatment.  *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456 (1972); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616 (1970).  For that reason, the courts have certified similar state law statutory overtime claims in other cases involving FLSA proceedings as discussed above.  *See McLaughlin v. Liberty Mutual Ins. Co.*, 224 F.R.D. at 312 (administration of individual class members' damages claims "straightforward" and not predominating over common issues); *Ladegaard*, 2000 WL

**B.     This Action is Superior to Other Methods of Adjudicating the Massachusetts Claims Because It Represents the Most Efficient Way to Resolve the Disputes Presented By This Action.**

Finally, Rule 23(b)(3) requires that a class action be superior to other available means of litigating the class members' claims. Fed. R. Civ. P. 23(b)(3) elaborates upon the factors which the court should consider in deciding this question:

> (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In this case, the class action procedure will provide the fairest and most efficient adjudication of the controversy between both Classes and the Defendants. First, certification is in the best interest of each Class, since, as demonstrated by the almost five years of litigation in this action and its predecessor, *McLaughlin v. Boston Harbor Cruise Lines, Inc.*, C.A. No. 03-10905 GAO, the cost of prosecuting individual actions against Defendants would be prohibitive relative to the size of any judgment that any individual might obtain. *See Scott*, 210 F.R.D. at 268 ("the cost of individual litigation is prohibitive, notwithstanding the high salaries of [the Plaintiff Class] or the sizable potential damages awards"). Moreover, "class members may fear reprisal and would not be inclined to pursue individual claims." *Id.* (certifying state law class claim in the context of FLSA collective action proceedings).

In addition, no other litigation exists concerning the claims of the Plaintiffs or the Classes under Massachusetts law. Accordingly, "there does not appear to be an interest of individual

---

1774091 at * 7 ("the questions of defendants' liability for back wages and overtime predominates over any individualized questions of . . . damages"); *Scott*, 210 F.R.D. at 267 (whether Defendant "acted improperly in classifying the plaintiffs is the common liability issue that predominates over all other factual and legal issues").

members in controlling the prosecution of the state claims." *O'Brien*, 203 F.R.D. at 352 (internal

quotations and citations omitted); *Ladegaard*, 2000 WL 1774091 at \*7 (same).  Just as in this case,

both *O'Brien* and *Ladegaard* involved certification of a state law Rule 23 class in the context of

FLSA collective action proceedings.  *Id.*

Should any individual employee wish to bring a separate state law action, he or she could do

so by opting out of the Class.  *See* Fed. R. Civ. P. 23(e).  Any single person's interest in bringing an

individual claim would not outweigh the interests of the remainder of the Class in resolving the

predominant common questions in a single proceeding that could be prosecuted at minimal expense

to the parties  in a manner least burdensome to the Court.  Other federal courts considering whether

to certify a state law Rule 23 class claim in conjunction with FLSA proceedings have reached this

same conclusion.  ("Resolution of common [FLSA and Massachusetts state law] issues in a single

forum will promote judicial economy and uniformity of outcome."); *Wise v. Patriot Resorts Corp.*,

Exhibit A, slip op. p. 7.  *See Ansoumana* 201 F.R.D. at 89 ("The interest of the class as a whole to

litigate the predominant common questions substantially outweighs any interest by individual

members to bring and prosecute separate actions.").

Finally, each of the last two factors points decidedly in favor of this action as the superior

method of adjudication.  Prosecuting the state and federal claims in the same forum presents the most

efficient and manageable method to resolve the claims.  Defendants cannot reasonably argue that

forcing the state law claims to be advanced in a separate Massachusetts forum represents a more

efficient way to resolve those claims.

As one federal court explained when faced with the identical question:

> Moreover, even with the presence of the FLSA action, individual
> plaintiffs could bring an action in state court on the state claims.  To
> avoid this result and to further judicial economy, it is desirable to
> concentrate the litigation in one forum.

*Ladegaard*, 2000 WL 1774091 at *7; *see also Scott*, 2210 F.R.D. at 268 (noting additional benefit

beyond efficiency is that "a class action would eliminate the risk that the question of law common to

the class will be decided differently in each lawsuit").   Other federal courts have agreed with

*Ladegaard*:

> If they are denied the opportunity of filing a class suit for their state
> claims in this court, they could file a suit for these claims in state
> court.   That result, however, would be inefficient.   It would be
> desirable to concentrate all litigation related to plaintiffs' common set
> of facts in this forum.

*O'Brien*, 203 F.R.D. at 352 (rejecting Defendant's argument that availability of FLSA collective

action rendered Rule 23 certification of state law claim unnecessary); *Ansoumana*, 201 F.R.D. at 89

(in certifying state law Rule 23 class in the context of FLSA collective action proceedings, the court

noted that "[t]hese common questions are best litigated in a single forum, and the proceedings

already undertaken cause any separate actions in this and other forums to be wasteful and

inefficient").

     As each of these federal courts observed, the addition of a state law class claim to a FLSA

collective action  did not create problems of manageability.   *See Ansoumana*, 201 F.R.D. at 89 ("the

difficulties likely to be encountered in the management of the class portion of this action are not

likely to be different or greater than in the management of the [FLSA] collective portion of this

action"); *O'Brien*, 203 F.R.D. at 352 ("the management of this class action should not be difficult");

*Ladegaard*, 2000 WL 1774091 at *7 ("The class is a manageable size and plaintiff will likely not

have problems contacting the potential class members.").   Indeed, other courts have managed classes

of thousands of employees in state law overtime claims.   *See Bell v. Farmers Ins. Exchange*, 115

Cal.App.4th 715 (Cal.Ct.App. 2004) (affirming trial court's use of representative and expert

testimony to support damage award for over 2,400 employees).

## CONCLUSION

For all of the reasons stated above, Plaintiffs respectfully request that the Court grant their Motion for Class Certification.

May 1, 2008                                        By their attorneys,

                                                   /s/ Thomas V. Urmy Jr.
                                                   Thomas V. Urmy, Jr. (BBO #506620)
                                                   Matthew L. Tuccillo (BBO #643336)
                                                   SHAPIRO HABER & URMY LLP
                                                   53 State Street
                                                   Boston, Massachusetts 02109
                                                   (617) 439-3939

                                                   Vincent P. Dunn (BBO #551034)
                                                   MELICK, PORTER & SHEA, LLP
                                                   28 State Street
                                                   Boston, Massachusetts 02109
                                                   (617) 523-6200


## CERTIFICATE OF SERVICE

I certify that this document, filed through the ECF system, will be sent electronically to the registered participants on the date of its filing with the Court.

                                                   /s/ Thomas V. Urmy Jr.
                                                   Thomas V. Urmy, Jr.